**DRINC–O–MATIC, Inc., v. FRANK et al.**

**No. 220.**

Circuit Court of Appeals, Second Circuit.

March 3, 1944.

See, also, 136 F.2d 906.

McInnes & Gamble, of New York City (Vahan H. Kalenderian, of New York City, of counsel), for appellant.

Underhill & Rubinger, of New York City (Maurice Rubinger, of New York City, of counsel), for appellees.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from an order expunging a claim filed by the appellant in the reorganization proceedings of Fountain Machines, Inc. The claim arose out of a contract for the purchase by the claimant from the debtor of 25 soda dispensing machines. The written contract of November 22, 1941, exhibit F, provided that the buyer was to send $100 per machine at the time of ordering delivery, to "arrange credit at the Second National Bank of Nashua, New Hampshire for $400 per machine to be released to Maine Manufacturing Company for your [the seller's] account against shipping documents," and to pay the balance of $100 per machine after receipt of the machines. The buyer sent the seller the sum of $2,500 as a deposit to be applied on account of the contract of purchase, but the machines were never shipped nor. was the deposit returned. In July, 1942, the seller filed a petition for reorganization under 11 U.S.C.A. § 501 et seq. As originally filed the buyer's proof of claim alleged that the $2,500 deposit was a trust fund which might be traced into the hands of the debtor's trustee, but by parol amendment at the hearing before the referee the claimant asserted a deposit in escrow and conversion thereof by the debtor. The referee, however, made findings that the $2,500 was not a deposit in escrow but a payment on account of the purchase price and he ruled that the proof of claim was not established because the buyer had failed to "arrange credit" as required by the terms of the contract. Accepting the referee's findings as supported by evidence the District Court confirmed the order disallowing the claim.

Whatever may have been the preliminary negotiations as to the $2,500 deposit, the written contract treated it as an initial payment on account of the purchase price. The referee's conclusion that it was not a deposit in escrow and was not converted by the seller is supported by the evidence. But we think that the finding that the buyer failed to arrange credit as required by the terms of the contract cannot stand and that the claim should be allowed as one for the return of the part payment of the purchase price.

One of the claimant's officers, Mr. Barnett, testified that credit arrangements were made with the Central Bank of Oakland, California, and that he and Mr. Jordan, the buyer's president, notified the seller of these arrangements in the course of telephone conversations with the latter's president, Mr. Needham. The witness was unable to give the exact dates of these conversations, but stated that several telephone talks occurred after November 22, 1941, the date of the contract. Moreover, copies of two letters which were admitted in evidence as claimant's exhibit 6 relate to credit arrangements. The letters were stricken at the close of the trial on motion of the debtor's trustee, apparently on the theory that they did not tend to prove the establishment of credit at the Second National Bank of Nashua. We think this was

error. Both appear in full in the margin below.[1] The first transmitted to the seller a copy of the second. The latter was addressed to Maine Manufacturing Company, in whose favor the credit was "to be released" for the seller's account according to the contract of November 22nd. It was in legal effect a valid letter of credit. See Byles on Bills, 18th Ed., p. 91; 3 Daniel on Negotiable Instruments, 7th Ed., §§ 2045, 2049; Lawrason v. Mason, 7 U.S. 492, 3 Cranch 492, 2 L.Ed. 509; American Steel Co. v. Irving Nat. Bank, 2 Cir., 266 F. 41; Union Bank v. Coster's Executors, 3 N.Y. 203, 53 Am.Dec. 280; Monroe v. Pilkington, 14 How. Prac., N.Y., 250; Bissell v. Lewis, 4 Mich. 450. Such documents do not have to be couched in any particular form. Second National Bank v. Columbia Trust Co., 3 Cir., 288 F. 17, 20, 30 A.L.R. 1299; Moss v. Old Colony Trust Co., 246 Mass. 139, 140 N.E. 803, 807, 808. The letter authorized the seller to draw on the Central Bank and expressed the latter's willingness to pay through "any channel" the payee might choose. Had the proposed transaction been consummated in reliance on this letter the Maine Company would have been paid at once by the Nashua bank's purchase of the seller's draft, the seller would have accomplished its purpose of releasing the machinery for delivery, and the bank would have been secured by the unconditional obligation of the Central Bank plus that of the seller as drawer of the draft. 3 Daniel, § 2053; Brannon, Negotiable Instruments, Law, 5th Ed., §§ 61, 134, 135. In the contemplation of the parties as evidenced by exhibit F the bank in Nashua as well as the Central Bank of Oakland was to be further secured by delivery of shipping documents to be attached to the draft. We are at loss to comprehend what further compliance with the terms of the contract, to "arrange credit at the Second National Bank of Nashua," the parties could have had in mind. A general letter of credit authorizing the seller to draw a draft payable through any channel he chooses must surely embrace arrangement through a specific channel. We have searched the record in vain for any intimation that measures uncommon in commercial usage were necessary to secure the contemplated credit. Nothing short of a cash deposit, clearly not intended, could have made payment more facile or more certain.

The seller's contention that the claimant, by failure to obtain the Nashua bank's approval of the credit arrangements, failed to perform a condition precedent to the seller's duty to ship the machines could be viewed more sympathetically if any timely objection had been raised by the seller with respect to the credit arrangements. Instead there is uncontroverted testimony that the claimant was never notified of any failure to establish credit. When it made these arrangements and notified the seller that they had been made, it complied substantially if not technically with the contract terms. A contracting party may not

---

[1]

CENTRAL BANK
Savings Commercial Trust
Oakland        California
December 22, 1941
Fountain Machines, Inc.
155—E. 44th Street
New York City, New York
    Atten: Basil A. Needham, President
Gentlemen:
    We are enclosing a copy of our letter to The Maine Manufacturing Company under today's date, which we believe you will find to be self-explanatory.
                Very truly yours,
                    H. O. Johnson,
                    Assistant Cashier
HOJ:GC
Enc.
        CENTRAL BANK
            *Oakland*
            California
            December 22, 1941
The Maine Manufacturing Company
Nashua, New Hampshire
    Atten: Philip Ellis Stevens, President

Gentlemen:
    We have your letter of December 19th requesting us to prepare an agreement between ourselves and Fountain Machines, Inc., authorizing the Second National Bank of Nashua to draw on us and turn the entire proceeds of such draft over to you.
    Inasmuch as Fountain Machines, Inc. is shown as "Seller" on the contract it will be necessary for them to draw the draft on us. However, it will be entirely proper for them to draw their draft payable to your order. If this is done you may direct us to make payment through any channel you wish. We believe that if the transaction is handled in this manner it will not be necessary for any special agreements to be drawn.
    We are sending a copy of this letter to Fountain Machines, Inc., and trust that this will enable them to consummate the transaction to your satisfaction.
                Very truly yours,
                (Signed)   H. O. Johnson
                        Assistant Cashier

accept a defective performance of a condition without objection and then seek to excuse nonperformance of its own obligations under the contract by denying that the condition was adequately performed. See Northwest Auto Co. v. Harmon, 9 Cir., 250 F. 832, 839, Ann.Cas. 1918E, 461; Cutting v. Bryan, 9 Cir., 30 F.2d 754, 756, certiorari denied 279 U.S. 860, 49 S.Ct. 418, 73 L.Ed. 1000; Williston on Contracts, Rev.Ed., § 688; A.L.I. Restatement, Contracts, § 298.

The referee's finding that Drinc-O-Matic failed to arrange credit must be reversed. It follows that the claim for $2,500 must be allowed as a debt of the debtor's estate. It is so ordered.